IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PETER ZISHKA, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 2:24-cv-02312-HLT-ADM** |
| **WWEX FRANCHISE HOLDINGS, LLC, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs Peter Zishka and Dennis Sisson bring this action against Defendants WWEX Franchise Holdings, WWEX Investment Holdings, and Globaltranz Enterprises. The first amended complaint includes nationwide class claims. Defendants move to dismiss and strike the claims of Sisson and the class for lack of personal jurisdiction because they do not arise out of Defendants' contacts with Kansas. Doc. 50. The Court agrees. Because Defendants did not employ Sisson or the out-of-state putative class members in Kansas and they were not harmed in Kansas, their claims for unpaid wages do not arise out of Defendants' contacts with Kansas. The Court dismisses Sisson's claims without prejudice and strikes the nationwide class claims.

## I.    BACKGROUND[1]

Zishka and Sisson are former employees of Defendants.[2] Zishka is a Kansas resident, and Sisson is a Mississippi resident. Doc. 37 at ¶¶ 5-6. The relevant events occurred in Kansas and Mississippi. *Id.* ¶ 13.

---

[1]    The following facts are taken from the first amended complaint, Doc. 37, and are accepted as true for purposes of the motion to dismiss. The Court has not included factual allegations not relevant to the motion.

[2]    Defendants are three separate entities. Doc. 37 at ¶¶ 7-9. For purposes of this order, the parties do not draw distinctions between the entities and the Court refers to them collectively as Defendants.

Defendants are in the business of shipping and logistics. *Id.* ¶ 64. Both Zishka and Sisson worked for Defendants as Sales and Operation employees, and Sisson also worked as a Marketing Representative. *Id.* ¶¶ 3-4, 11. Sales and Operation employees connected shippers with freight carriers and earned commission on the gross margin. *Id.* ¶¶ 67-69. The first amended complaint offers this example at how Defendants facilitated shipments and earned payment:

> For example, if [Coca-Cola] wished to transport four pallets of freight for $150, WWEX Sales and Operation employees would identify a freight carrier like Old Dominion to do so. WWEX Sales and Operation employees would use WWEX's software system to search WWEX's lists of freight carriers who had submitted bids on the load. The WWEX Sales and Operation employees would be shown in WWEX's software system that Old Dominion had offered to ship Coca-Cola's freight for a rate of $100. For coordinating the transaction, WWEX, under this example, would keep the difference between Coca-Cola's $150 offer and Old Dominion's $100 offer. This difference between Coca-Cola's $150 offer and Old Dominion's $100 offer was referred to as the "gross margin."

*Id.* ¶ 68. Plaintiffs allege that Defendants invoiced shippers a greater amount than what Sales and Operation employees saw in Defendants' system by adding in insurance and fuel surcharges. *Id.* ¶ 71. This resulted in a greater gross margin collected by Defendants. *Id.* But Defendants paid commissions based on the lower gross margin seen by Plaintiffs in the system. *Id.* ¶¶ 72-75.

Zishka brings individual claims under Title VII, the ADEA, and the ADA, and a claim for breach of implied contract (Counts I through V). Those claims are not at issue in the current motion. At issue are the three class claims, which are also asserted by Sisson. The first class claim (Count VI) is asserted under the Kansas Wage Payment Act ("KWPA"). The second class claim (Count VII) is for unjust enrichment/quantum meruit. The third class claim (Count VIII) is for breach of contract. The proposed class definition is:

> All persons who currently work or have worked as Sales and Operation employees and Marketing Representatives for WWEX and are paid commission based on "gross margin" of sales at any

time from the date of October 9, 2014, through the entry of judgment in this action (the Rule 23 Class).

*Id.* ¶ 78.

## II.    STANDARD

A plaintiff bears the burden to establish personal jurisdiction over each defendant. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). But the plaintiff need only make a prima-facie showing of personal jurisdiction when a court decides a Rule 12(b)(2) motion on the basis of affidavits and other written materials. *Id.* Courts assume the allegations in the complaint to be true to the extent uncontradicted by the defendant's affidavits, and the court resolves all factual disputes in the plaintiff's favor. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

## III.    ANALYSIS

Defendants move to dismiss Sisson's claims and strike the class claims for lack of personal jurisdiction. Doc. 50. They alternatively request that the Court dismiss or strike the putative class claims because the class is impermissibly broad and lacks commonality. The Court starts with whether there is personal jurisdiction as to Sisson's claims and then considers whether there is personal jurisdiction over the nationwide class claims. The Court then turns to the argument that the class is impermissibly broad and lacks commonality.

### A.    The Court lacks personal jurisdiction over Defendants as to Sisson's claims.

To establish personal jurisdiction over a defendant, a plaintiff must satisfy both the state long-arm statute and constitutional due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). The Kansas long-arm statute reaches as far as federal due process will allow, so the issue is narrowed to whether assertion of personal jurisdiction over the defendant would violate due process. *See OMI Holdings*, 149 F.3d at 1090.

Due process allows a federal court sitting in diversity to exercise personal jurisdiction over a non-resident defendant if there exists "minimum contacts" between the defendant and the forum state. *See World-Wide Volkswagen, Co. v. Woodson*, 444 U.S. 286, 291 (1980). Minimum contacts can be met through either "specific" jurisdiction or "general" jurisdiction. *OMI Holdings*, 149 F.3d at 1090-91. In this case, Plaintiffs only argue that specific jurisdiction is at issue, *see* Doc. 62 at 2, so the Court does not analyze whether general jurisdiction exists.[3]

Specific jurisdiction has two requirements. First, the defendant must have purposefully directed its activities at residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Second, the suit must arise out of the actions connecting the defendant with the forum. *Id.*[4]

The parties do not really dispute that Defendants have directed activities at the forum in that they maintain a branch in the state and employ workers in Kansas (the first step of specific jurisdiction).[5] It's the second step of the analysis where the disagreement lies—whether the claims arise out of Defendants' contacts with the forum. Defendants argue Sisson never sought employment with Defendants in Kansas, never worked in Kansas, and was never paid in Kansas. Doc. 51 at 2. Rather, the first amended complaint specifically alleges that Sisson is a resident of

---

[3]    The first amended complaint alleges all Defendants are based in Texas. All Defendants are LLCs, and although their members are not identified, this would not affect the personal-jurisdiction analysis even if general jurisdiction was alleged. *Snider v. Pilot Travel Centers, LLC*, 2023 WL 3092884, at *2 n.1 (D.N.M. 2023) ("Although Pilot is an LLC, it is treated like any other corporation for the purpose of general personal jurisdiction. That is, although the members of an LLC determine citizenship in a diversity analysis, they have little or no bearing on where an LLC is 'at home.'").

[4]    If a plaintiff satisfies both requirements, a defendant can try to establish that exercising jurisdiction would violate traditional notions of fair play and substantial justice. *OMI Holdings*, 149 F.3d at 1091. Because Plaintiffs do not satisfy the requirements of specific jurisdiction, the Court does not need to reach this step.

[5]    Plaintiffs' response dedicates several pages to demonstrating Defendants' contacts with Kansas, including its employment of workers in the state, its participation in a state benefits program, and its other business activities in Kansas. Doc. 62 at 5-8. These arguments are aimed at showing Defendants have directed activities at Kansas for purposes of meeting the first prong of the specific-jurisdiction analysis rather than attempting to show general jurisdiction exists. *Id.* at 8.

Mississippi and that he was employed there. *Id.* at 11. Thus, his claims about unpaid wages do not arise out of or relate to Defendants' contacts with Kansas. Plaintiffs respond that Sisson's claims arise out of or relate to, or have an "affiliation" with, Defendants' conduct in Kansas because Defendants arranged for freight shipments that sometimes originated in Kansas and Plaintiffs, including Sisson, earned commissions on these shipments. Doc. 62 at 9.

### 1. Plaintiffs' claims are not limited to transactions touching Kansas.

As an initial matter, there are no allegations in the complaint about shipments to or originating in Kansas. None of the claims are limited in that way. Rather, Plaintiffs rely entirely on two declarations submitted by Zishka and Sisson. *See* Docs. 62-3 and 62-4. Zishka, who worked in Kansas, submitted a declaration discussing one account he had that shipped from Olathe, Kansas, and another account he was aware of that also shipped from Kansas. Doc. 62-3. Sisson's declaration states that he worked on accounts resulting in thousands of shipping transactions. Doc. 62-4 at 2. But he can't remember all the details. *Id.* At most, he can recall one account, Sally's Beauty Supply, which primarily shipped to the Northeast. *Id.* Sisson's declaration then notes that Sally's Beauty Supply has a "robust business presence in Kansas," though he stops short of stating that he worked on any shipment to or from Kansas for Sally's. *Id.*

The Court agrees with Defendants that, even if shipments to or from Kansas could be said to "relate" Plaintiffs claims to Defendants' contacts with Kansas (discussed further below), there is nothing in the record that Sisson ever worked on such an account. Notably, these allegations about Kansas shipments are completely absent from the first amended complaint. And Sisson's own declaration can't even say for certain that he ever worked on a single account for a shipment that even passed through Kansas.[6] Thus, even if the existence of shipments to or from Kansas was

---

[6] Even Zishka, who worked in Kansas, only identifies two accounts that shipped from Kansas, one of which he didn't even work on. Doc. 62-3 at 1-2. Although Zishka's claims are not at issue, the Court questions Plaintiffs'

a sufficient connection to Kansas for purposes of personal jurisdiction, this is not what the complaint alleges, nor has any affidavit or declaration shown that this connection even exists as to Sisson.

### 2.    The claims do not arise out of Defendants' contacts with Kansas.

Even if there was support for the existence of shipments touching Kansas, the claims in this case are not about those shipments. The claims in the case are about the calculation of Plaintiffs' commissions. It is a wage case arising out of Plaintiffs' employment with Defendants. Where the underlying shipments went to or were sent from has no bearing on the central claim in the case—that Defendants systematically shorted Plaintiffs' commissions. That some of the shipments passed through Kansas is little more than coincidence. The claims would exist regardless of where any shipment originated or went.[7]

As to Sisson in particular, he does not live in Kansas, did not work in Kansas, and was not paid (or underpaid) in Kansas. His harm (being shorted on his commissions) did not occur in Kansas. His claims arise from his employment with Defendants, which was in Mississippi. His claims do not arise out of shipments originating or ending in Kansas. Sisson's claims are therefore insufficient to establish specific jurisdiction over Defendants in Kansas. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264-65 (2017) (finding a lack of jurisdiction over claims of out-of-state plaintiffs whose claims and injuries did not arise in the forum state).[8]

---

reliance on both declarations for the conclusion that "at least some, if not hundreds or thousands, of the transactions from which Plaintiffs' claims arise were destined for, routed through, or depart[ed] from Kansas." *See* Doc. 62 at 11.

[7]    Perhaps underscoring this point is the fact that the first amended complaint in no way limits Plaintiffs' claims to underpaid commissions for shipments touching Kansas.

[8]    The Court notes Plaintiffs' argument that *Bristol-Meyers* should not extend to class claims and discusses it below. But regardless of whether it extends to class claims, Sisson is not a class plaintiff. He is a named plaintiff. The Court also notes *Bristol-Meyers* was addressing the limits of personal jurisdiction by a state under the Fourteenth Amendment and left open the question of "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 582 U.S. at 257. The Supreme Court very recently addressed

Plaintiffs rely on the "affiliation" language in *Ford v. Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021). There, the Supreme Court said that claims "must arise out of or relate to the defendant's contacts" with a forum, or "put just a bit differently," there must be an "affiliation" with the forum. *Id.* at 359-60. Plaintiffs say the affiliation here is shipments through Kansas. Doc. 62 at 9-11. But Plaintiffs ignore a key distinction the Supreme Court drew in *Ford*, particularly with *Bristol-Meyers*. In *Bristol-Meyers*, the plaintiffs sued in California even though they were not California residents, had not been prescribed the medication at issue in California, and had not taken or been injured by the medication in California. *Ford*, 592 U.S. at 369-70. There was no specific jurisdiction because the claims (injury from the medication) did not arise out of the defendant's contact with California. *Id.* By contrast, in *Ford*, the allegedly defective products at issue were used and malfunctioned <u>in the forum state</u>, which made the forum a logical place to bring the suit—"based on an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that took place there." *Id.* at 370 (cleaned up). This case is much more like *Bristol-Meyers* than *Ford* in that Sisson did not work or live in Kansas and suffered no injury in Kansas.[9] And, unlike in *Ford*, Sisson was not injured in the forum and thus the requisite "affiliation" with Kansas is missing.

---

the distinction in a personal-jurisdiction analysis under the Fourteenth Amendment versus the Fifth Amendment in *Fuld v. Palestine Liberation Org.*, 145 S. Ct. 2090 (2025). But that case noted the distinction it found was limited to cases where personal jurisdiction was authorized by federal statute. *Id.* at 2102. The claims here are state-law claims.

[9]    The Tenth Circuit's decision in *Hood v. American Auto Care, LLC*, does not change the outcome here. *Hood* found that personal jurisdiction exists where "(1) the defendant has purposefully directed activity to market a product or service at residents of the forum State and (2) the plaintiff's claim arises from essentially the same type of activity, even if the activity that gave rise to the claim was not directed at forum residents." 21 F.4th 1216, 1224 (10th Cir. 2021). But *Hood* involved a resident plaintiff injured in the forum state—unlike Sisson in this case. *Id.* And Plaintiffs don't argue that Sisson can bring his claims in this forum in Kansas simply because Zishka has a similar claim based on the same conduct by Defendants in Kansas aimed at Zishka.

### 3.    Plaintiffs' reliance on *Brandi v. Belger Cartage Services* is misplaced.

Plaintiffs rely on *Brandi v. Belger Cartage Service, Inc.* 842 F. Supp. 1337 (D. Kan. 1994),
to argue that a freight broker's activity in shipping freight through Kansas was a sufficient contact
to the forum to exercise specific jurisdiction. Doc. 62 at 10. But that case is distinguishable. In
*Brandi*, the defendant was a shipping company based in Colorado, with no contacts with Kansas.
842 F. Supp. at 1340. The plaintiff arranged with the defendant to ship some furniture from
Missouri to Colorado, and requested the defendant obtain insurance. *Id.* The defendant contracted
another party to transport the freight, which was ultimately damaged during shipment while in
Kansas. *Id.* The insurance secured by the defendant was insufficient and it led to a lawsuit filed in
Kansas. *Id.* The court found specific jurisdiction existed in Kansas because the defendant had made
a contract to transport goods from Missouri to Colorado, and it was foreseeable the shipment would
pass through Kansas. *Id.* at 1341-42. The claims for breach of contract and negligence were based
on the insufficient insurance following the accident that occurred while shipping the freight
through Kansas. *Id.*

These facts are distinct from the facts here. In *Brandi*, the claims (negligence and
inadequate insurance) directly arose out of the damaged shipment, which occurred in Kansas.
Here, the claims arose out of Defendants' employment of Plaintiffs and the manner in which they
calculated commissions. Defendants employed Sisson in Mississippi, not Kansas. While it might
be foreseeable that Defendants would be subject to litigation in Kansas for shipments it arranged
that were damaged in Kansas, it would not be foreseeable that an employee in Mississippi would
bring a suit against Defendants in Kansas for miscalculated commissions paid in Mississippi.
*Brandi* is distinguishable.

####     4.    Discovery would not change the analysis.

Finally, Plaintiffs argue they should be allowed "to conduct jurisdictional discovery on the extent of these transactions from which Plaintiffs['] claims arise." Doc. 62 at 9. But discovery would not help Plaintiffs. Even if they identified all the transactions that originated in or passed through Kansas, it would not change the personal-jurisdiction analysis for Sisson because his claims do not arise out of or relate to those shipments.

Sisson's claims are therefore dismissed without prejudice for lack of personal jurisdiction. *See Birch v. Sprint/Nextel Corp.*, 675 F. App'x 821, 824-25 (10th Cir. 2017) (stating dismissals for lack of personal jurisdiction should be without prejudice).[10]

### B.    The Court lacks personal jurisdiction over Defendants as to the class.

Defendants next argue that the first amended complaint does not include any allegations that show any claims by any out-of-state putative class members arise out of or relate to their contact with Kansas. Doc. 51 at 2. Because of this, and for essentially the same reason there is no personal jurisdiction over the claims by Sisson, Defendants argue there is no personal jurisdiction over the claims of any out-of-state putative class members. *Id.* at 2-3. Plaintiffs' response brief generally does not distinguish the analysis between Sisson and the out-of-state putative class members for purposes of personal jurisdiction. *See* Doc. 62 at 12 (noting that "the same facts and reasoning applies regarding specific personal jurisdiction" over Sisson and the putative class

---

[10] "Courts have discretion under 28 U.S.C. § 1631 to cure jurisdictional defects by transferring a case to a district where it could have been brought." *Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793, 796 (10th Cir. 2016). Neither party discusses or advocates for a transfer under § 1631. In the interest of completeness, the Court does not find that transfer is appropriate as to Sisson's claims. Section 1631 refers to transfer of an "action." Here, Zishka's claims are not at issue and will remain pending in the District of Kansas, so transfer of this action is not appropriate.

members). For the reasons stated above, the Court finds that Plaintiffs have not shown specific personal jurisdiction would exist as to the out-of-state putative class members.[11]

Plaintiffs suggest that the Court should defer ruling on the class members until after certification. Doc. 62 at 11-13. But it is unclear what would change if the Court were to await jurisdictional or class discovery. The problem here isn't a lack of information about the out-of-state individuals' contact with Kansas. It is that the theory (Kansas-based shipments) is faulty. In other words, even if Plaintiffs were allowed discovery about the transactions that "were destined for, routed through, or depart[ed] from Kansas," *id.* at 11, the personal-jurisdiction problem would persist. Where, as here, the class claims could not be sustained as a matter of law, a court may strike those claims from the pleadings. *See Stacker*, 2021 WL 2646444, at *11; *In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 1391045, at *2 (D. Kan. 2016); *Hull v. Viega, Inc.*, 2013 WL 759376, at *3 (D. Kan. 2013). The Court therefore strikes the class claims for lack of personal jurisdiction.[12]

### C. The Court need not reach Defendants' argument that the class is impermissibly broad and lacks commonality.

Defendants argue alternatively that any class would be impermissibly broad to the extent the claim is based on the KWPA because out-of-state putative class members are not protected by the KWPA and that the putative nationwide class could not satisfy Rule 23's commonality

---

[11] Plaintiffs' response briefly but not meaningfully disputes whether the personal-jurisdiction analysis in *Bristol-Meyers* can be applied to a putative class action. *See* Doc. 62 at 4, 11-13. As Plaintiffs recognize, this Court has previously cited with approval *Stacker v. Intellisource, LLC*, 2021 WL 2646444, (D. Kan. 2021), which found that the due-process concerns in *Bristol-Meyers* extended to nationwide class actions and foreclose claims by out-of-state putative class members that are not based on the defendant's conduct in the forum state. *See Renne v. NextEra Energy, Inc.*, 2022 WL 2918123, at *10-11 (D. Kan. 2022). The Court acknowledges that a split of authority exists on this issue. *See Stacker*, 2021 WL 2646444, at *8. But it remains persuaded by the analysis in *Stacker*. Plaintiffs' attempt to distinguish this case from *Renne*, Doc. 62 at 13, are also not persuasive for the reasons stated above.

[12] The Court strikes the class claims in total because they are not limited to potential Kansas class members or based on Kansas contacts.

requirement because the Court would have to apply the law where each class member entered into a contract with Defendants. Doc. 51 at 3. Given the ruling above striking the class claims, the Court does not need to reach these arguments, and this part of the motion is denied without prejudice.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion to Dismiss and Strike Claims (Doc. 50) is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE. As discussed above, the Court DISMISSES WITHOUT PREJUDICE Sisson's claims for lack of personal jurisdiction. The Court STRIKES the class claims from the first amended complaint. The Court does not reach the remaining arguments and the remainder of the motion is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: July 29, 2025                    /s/ Holly L. Teeter
                                        HOLLY L. TEETER
                                        UNITED STATES DISTRICT JUDGE